**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 11-7335

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

CALVIN DOUGLAS DYESS, a/k/a Carlos, a/k/a Calcutta, a/k/a Rawmel,

Defendant – Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston.   David A. Faber, Senior District Judge.  (2:08-cv-00849; 2:99-cr-00012-1)

Argued:  May 16, 2013                  Decided:  September 16, 2013

Before NIEMEYER, GREGORY, and SHEDD, Circuit Judges.

Affirmed by published opinion.  Judge Shedd wrote the opinion in which Judge Niemeyer joined and in which Judge Gregory joined as to Parts I, II, and IV.   Judge Gregory wrote a dissenting opinion as to Part III.

**ARGUED**: Jeffrey Michael Brandt, ROBINSON & BRANDT, P.S.C., Covington, Kentucky, for Appellant.   Kimberly Riley Pedersen, OFFICE OF UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.   **ON BRIEF**: Neil H. MacBride, United States Attorney, Alexandria, Virginia, for Appellee.

SHEDD, Circuit Judge:

Calvin Dyess pled guilty to conspiracy to distribute cocaine, cocaine base, and marijuana, in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(b), and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956, and was sentenced to life imprisonment. We affirmed his conviction and sentence on direct appeal. United States v. Dyess, 478 F.3d 224 (4th Cir. 2007) (Dyess I). Dyess then filed a 28 U.S.C. § 2255 motion, which the district court denied. Dyess v. United States, 2011 WL 3667528 (S.D. W.Va. 2011) (Dyess II). Dyess now appeals and, for the following reasons, we affirm.

I.

The facts and procedural history of Dyess' case are thoroughly recounted in our earlier opinion. See Dyess I at 226-33. Briefly, and as relevant here, Dyess and several co-conspirators were indicted in a thirteen-count indictment arising from their operation of a large-scale drug conspiracy in Charleston, West Virginia, from 1995 to 1998.[1] Before trial, the Government met with Dyess, indicating the strength of its case against him and informing him that he was likely to receive a life sentence unless he was acquitted or pled guilty and offered

---

[1] The criminal investigation into Dyess' organization led to more than 20 criminal convictions, including drug suppliers from New York.

substantial assistance. Just days after meeting with the Government, Dyess entered a plea agreement whereby he agreed to plead guilty to conspiring to distribute cocaine, cocaine base, and marijuana and conspiring to commit money laundering. In exchange, the Government agreed to dismiss the remaining counts. Among the counts dismissed was a continuing criminal enterprise charge, 21 U.S.C. § 848, which carried a 20-year mandatory minimum sentence. At the plea hearing, the district court expressly told Dyess (among other things) that he was facing a sentence of ten years to life imprisonment on the drug conspiracy count. Dyess stated that he understood, and the court accepted his plea.

A presentence report (PSR) was prepared for Dyess, finding that he was responsible for 20 kilograms of cocaine, 80 kilograms of cocaine base, and 272.16 kilograms of marijuana. These drug amounts yielded a base-offense level of 38 and, when coupled with several enhancements, resulted in a guidelines range of life imprisonment. Dyess objected to the drug amounts and, at a contested sentencing hearing, the district court heard from multiple witnesses about the scope of Dyess' drug enterprise. For example, one witness, Leon Mitchell, testified that he and Dyess handled between 75 and 100 kilograms of cocaine, half of which they cooked into crack cocaine. The

district court upheld the PSR's findings and accordingly sentenced Dyess to life.

Dyess timely appealed. While Dyess' appeal was pending, the Government was contacted by Rachel Ursala Rader, Dyess' wife during the conspiracy. Rader informed the Assistant U.S. Attorney (AUSA) that, during the investigation, she had engaged in a sexual relationship with William Hart, a detective and one of the lead investigators in Dyess' case. Rader also informed the AUSA that Hart had let her keep certain drug proceeds that she offered to turn over and had helped to craft her testimony at the sentencing hearing. When presented with this information, we issued an order remanding the case for appropriate proceedings.

On remand, Dyess moved to dismiss the indictment for government misconduct, to withdraw his plea, and to be resentenced.[2] The district court denied the first two requests and deferred ruling on the motion for resentencing pending an evidentiary hearing. Prior to this evidentiary hearing, however, the district judge (Judge Haden) passed away. The case

---

[2] Dyess also moved to disqualify the U.S. Attorney's Office for the Southern District of West Virginia. The district court granted this motion. United States v. Dyess, 231 F.Supp.2d 493 (S.D.W.Va. 2002). The court found no wrongdoing by the office, but concluded that the attorneys could be called as witnesses in future proceedings. Since that time, the Government has been represented by Special Assistants to the Attorney General.

4

was reassigned to District Judge Faber, who then held an evidentiary hearing limited to the issue of whether Hart's misconduct and the perjury of Rader (and several others) at the sentencing affected Dyess' sentence. The court explained that if the answer was "yes," a new sentencing would be held. After the hearing, which included testimony from witnesses impacted by Hart's misconduct, the district court found the tainted testimony did not affect Dyess' sentence and declined to hold a resentencing. Dyess appealed, and we affirmed. Dyess I, 478 F.3d at 227.

In 2008, Dyess filed a motion to vacate his sentence under 28 U.S.C. § 2255. The district court eventually denied that motion. Dyess II, 2011 WL 3667528, at *13. Dyess filed this appeal, and this court granted Dyess a COA on six claims: (1) whether the district court erred in failing to address all claims raised in Dyess' § 2255 motion filed on September 29, 2008; (2) whether Dyess was sentenced in violation of Apprendi v. New Jersey, 530 U.S. 466 (2000); (3) whether Dyess' trial counsel was ineffective for failing to discover and disclose Hart's misconduct; (4) whether Dyess' trial counsel was ineffective for failing to object to the superseding indictment's lack of specific drug quantities and in advising Dyess to plead guilty to the indictment; (5) whether Dyess' remand counsel was ineffective for failing to call all witnesses

5

from Dyess' sentencing hearing to testify at the evidentiary hearing; and (6) whether Dyess' remand counsel was ineffective for failing to effectively challenge Dyess' guilty plea on remand. We review the district court's legal conclusions in denying Dyess' § 2255 motion de novo and its factual findings for clear error. United States v. Stitt, 552 F.3d 345, 350 (4th Cir. 2008).

## II.

Dyess' first contention is that the district court erred in failing to address all of his § 2255 claims. Dyess filed a "letter" with the court in June 2008 challenging his sentence and requesting appointment of counsel. The district court denied the motion for counsel, construed the letter as a § 2255 motion, and ordered Dyess to file the appropriate paperwork listing all his grounds for relief. Dyess then filed a § 2255 motion on September 29, 2008, listing out approximately 30 claims for relief, roughly 25 of which consisted of a single sentence with no further explanation or factual development. In February 2010, Dyess filed a request to file an "amended" § 2255 petition, raising 16 claims, most of which alleged ineffective assistance of counsel. Several of these claims were repeated from his earlier filings. The district court ruled that, "[g]iven Mr. Dyess' later submission" it was appropriate to

6

consider only the claims in the amended petition. Dyess II, 2011 WL 3667528, at *1.

Dyess claims that the court erred in considering only the claims in the amended complaint and that the case should be remanded for consideration of the roughly 40 claims raised in his initial § 2255 motion and several letters. We disagree. With the exception of the Apprendi claim addressed below, Dyess has never identified which of these claims he believes to have merit. Most, as the Government notes, fail the requirement that a habeas petition "is expected to state facts that point to a real possibility of constitutional error." Blackledge v. Allison, 431 U.S. 63, 75 n.7 (1977) (internal quotation marks omitted). The rules governing habeas proceedings make this very point:

> If it plainly appears from the motion and any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion.

Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts.

Thus, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000). See also Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) (noting "conclusory allegations which are not supported by a statement of specific facts do not warrant habeas

relief") (internal quotation marks omitted); <u>Andiarena v. United States</u>, 967 F.2d 715, 719 (1st Cir. 1992) (holding claim that included "wholly conclusory" "abstract allegation" was "properly subject to summary dismissal").  We do not believe the district court erred in limiting its review to the 16 claims in the amended petition that were supported by facts and argument, particularly where many of the claims in the amended § 2255 motion were also raised in the original filing and the rest consisted only of vague and conclusory allegations.

### III.

Dyess next claims that his sentence violates <u>Apprendi</u> because the indictment did not allege a specific drug quantity. Under <u>Apprendi</u>, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Apprendi</u>, 530 U.S. at 490. In <u>United States v. Promise</u>, 255 F.3d 150, 156-57 (4th Cir. 2001) (en banc), we held that <u>Apprendi</u> requires drug amounts under § 841(b) to be alleged in the indictment.  Dyess thus argues that, because his conviction and sentence did not become

8

final until after Apprendi,[3] the superseding indictment's failure to supply a drug amount limits his maximum sentence to 20 years.[4]

Dyess' argument fails for two reasons.  First, it is well settled that Dyess cannot "circumvent a proper ruling . . . on direct appeal by re-raising the same challenge in a § 2255 motion."  United States v. Linder, 552 F.3d 391, 396 (4th Cir. 2009).  See also United States v. Roane, 378 F.3d 382, 396 n.7 (4th Cir. 2004) (noting that, absent "any change in the law," defendants "cannot relitigate" previously decided issues in a § 2255 motion); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (holding criminal defendant cannot "recast, under the guise of collateral attack, questions fully considered by this court [on direct appeal]").  Dyess raised his Apprendi argument on remand to the district court and raised it in his brief to us in Dyess I.  In Dyess I, we specifically noted that Dyess "argued for re-sentencing on the basis of the United States Supreme Court's intervening decision in Apprendi," that the district court "denied" this relief, and that we "affirm the convictions and sentences."  Dyess, 478 F.3d at 227.  This

---

[3] Apprendi was decided in 2000, and our decision affirming his conviction was issued in 2007.

[4] 21 U.S.C. 841(b)(1)(C) provides that distribution of an undetermined amount of a schedule I or II controlled substance "shall be sentenced to a term of imprisonment of not more than 20 years."

9

conclusion plainly bars Dyess from raising this claim in his § 2255 motion.[5]

Moreover, even assuming Dyess could raise this claim, under the facts of this case, it still fails. Dyess waited until the remand from this court to raise the issue, well after judgment issued. Accordingly, any Apprendi claim Dyess raises would be reviewed for plain error. See Fed. R. Crim. P. 52(b). "To obtain relief under plain-error review, [a criminal defendant] must first establish that the district court erred, that the error was plain, and that it affected his substantial rights." United States v. Abdulwahab, -- F.3d --, 2013 WL 1789741, at *9 (4th Cir. 2013) (internal quotation marks omitted). Even if a defendant makes this showing, "we have discretion whether to

---

[5] Dyess argues that we did not specifically discuss his Apprendi claim and focused instead on his argument under Booker v. United States, 543 U.S. 220 (2005). There is no requirement that a court specifically discuss every issue raised by an appellant. See Affymax, Inc. v. Ortho-McNeil-Janssen Pharm., Inc., 660 F.3d 281, 285 (7th Cir. 2011) (noting "[f]ederal courts . . . often let issues pass in silence"); United States v. Patel, 879 F.2d 292, 295 (7th Cir. 1989) (denying rehearing petition "complain[ing] about the failure of the court to discuss every issue," because "[w]hen issues patently lack merit, the reviewing court is not obliged to devote scarce judicial resources to a written discussion of them"). Dyess raised Apprendi in his direct appeal, we noted that he had made the argument to the district court, and we affirmed his conviction and sentence in all respects. Nothing more is required. To the extent Dyess believes we overlooked his argument, the remedy was to file a petition for rehearing or—as Dyess unsuccessfully did—seek a writ of certiorari to the Supreme Court, not to file a § 2255 motion.

recognize the error, and should not do so unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Hargrove, 625 F.3d 170, 184 (4th Cir. 2010) (internal quotation marks omitted).

In United States v. Cotton, 535 U.S. 625, 633 (2002), the Court held that Apprendi errors under §841(b) should not be recognized on plain error review when the evidence as to drug quantity was "overwhelming" and "essentially uncontroverted." In this case, because "a cursory review of the record reveals that the conspiracy charged here indisputably involved quantities of cocaine and cocaine base far in excess of the minimum amounts necessary to sustain the sentences," any Apprendi error "does not seriously affect the fairness, integrity, or public reputation of judicial proceedings so as to warrant notice." United States v. Mackins, 315 F.3d 399, 408 (4th Cir. 2003).[6]

IV.

Dyess' remaining claims challenge the effectiveness of his counsel, both at the time he pled guilty and on remand from this

---

[6] To qualify for a life sentence under § 841(b)(1)(A), a defendant must be found responsible for, as relevant here, at least 5 kilograms of cocaine  or 280 grams of cocaine base.  As discussed above, one witness testified that the conspiracy involved at least 75 to 100 kilograms of cocaine, of which half was cooked into cocaine base.

11

court. In order to establish ineffective assistance, Dyess must show "(1) that his attorney's performance 'fell below an objective standard of reasonableness' and (2) that he experienced prejudice as a result, meaning that there exists 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" United States v. Fugit, 703 F.3d 248, 259 (4th Cir. 2012) (quoting Strickland v. Washington, 466 U.S. 668, 687–88, 694 (1984)).

## A.

Dyess' first two ineffective assistance claims allege that trial counsel was ineffective for failing to object to the lack of drug quantity in the indictment and for failing to discover Hart's misconduct. These claims both relate to Dyess' decision to plead guilty. "In that situation, a person must demonstrate 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Fugit, 703 F.3d at 259 (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). The Supreme Court recently reaffirmed that "[s]urmounting Strickland's high bar is never an easy task" in the guilty-plea setting. Padilla v. Kentucky, 130 S.Ct. 1473, 1485 (2010). Thus, Dyess must convince us that the decision to go to trial "would have been rational under the circumstances." Id. Dyess' "subjective preferences, therefore,

12

are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all the facts." Fugit, 703 F.3d at 260. Given this standard, we conclude the district court correctly dismissed Dyess' claims against trial counsel.

1.

Dyess' first claim alleges that trial counsel failed to investigate and discover Hart's affair with Dyess' wife prior to Dyess' guilty plea. Dyess, however, raised a variation on this claim in his direct appeal, arguing that his attorney "rendered ineffective assistance by failing to uncover Hart and Miss Rader's love affair and anticipate the impact it would have at sentencing." Dyess I, 478 F.3d at 238. We rejected Dyess' claim, finding that "the federal prosecutors" had "no knowledge" of the affair until well after sentencing, and Dyess "offer[ed] no indication as to why his attorney should be expected to have some special knowledge of the situation." Id.

Even assuming our earlier conclusion does not bar this claim, it lacks merit. We have indicated that "[a]lthough counsel should conduct a reasonable investigation into potential defenses, Strickland does not impose a constitutional requirement that counsel uncover every scrap of evidence that could conceivably help their client." Green v. French, 143 F.3d 865, 892 (4th Cir. 1998) overruled on other grounds by Williams

13

v. Taylor, 529 U.S. 362 (2000). Dyess claims that, after his guilty plea but prior to sentencing, he learned from fellow inmates that Hart and Rader had been seen holding hands at nightclubs. (J.A. 852). Dyess alleges that he told his counsel this fact on two occasions, including once after seeing Hart at the jail. According to Dyess, counsel hired an investigator but was unable to substantiate Dyess' claim and declined to raise the issue at sentencing without concrete evidence. Dyess also alleges that counsel held "meetings" with him "to develop a plan of action, while Dyess told them all that he could learn." (J.A. 852). Dyess' counsel thus conducted an appropriate investigation—all that Strickland requires. While a failure to investigate a "critical" witness can be ineffective assistance, see Huffington v. Nuth, 140 F.3d 572, 580 (4th Cir. 1998), we have never held that an attorney's hiring of an investigator who fails to discover evidence renders that attorney ineffective. Although we now know that Dyess' suspicions were true, that does not make counsel's failure to uncover the affair in 1999 ineffective assistance.

Moreover, Dyess cannot show prejudice. Dyess was facing a potential life sentence; he pled guilty shortly after the Government informed him that his only opportunity to avoid a life sentence was to be acquitted or to plead guilty and offer

14

substantial assistance in exchange for a sentence reduction.[7] Dyess then failed to offer assistance. The Government had overwhelming evidence of Dyess' guilt—his arrest and prosecution were the result of a long investigation complete with wiretaps, drug buys, and co-conspirator testimony. Dyess also received a substantial benefit from pleading guilty—the Government dismissed nine of the eleven counts against him, one of which carried a 20-year mandatory minimum. Cf Fugit, 703 F.3d at 260-61 (finding no prejudice from alleged ineffective assistance where Government would have offered overwhelming evidence at trial and defendant would have faced a longer sentence). We recognize that Dyess ultimately received a life sentence despite pleading guilty. This fact, however, does not change our analysis because, at the time Dyess entered his plea, a rational defendant would have recognized that a conviction inevitably would lead to a life sentence. Conversely, entering a plea agreement, which removed a count with a higher mandatory minimum (20 years under § 848 versus ten years under § 841(b)), and offering substantial assistance provided the best opportunity to avoid a life sentence. While Dyess subjectively claims he would

---

[7] United States Sentencing Guideline Manual § 5K1.1 provides that, "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines."

15

have gone to trial had he known of Hart and Rader's relationship, objectively a reasonable defendant would have pled guilty and offered substantial assistance.

2.

We also find Dyess' second ineffective claim against trial counsel lacks merit. Dyess claims that, in light of Jones v. United States, 526 U.S. 227 (1999), counsel should have recognized that drug weights were an element of the offense under § 841(b) that must be charged in the indictment. In Jones, the Supreme Court examined the federal carjacking statute and held that certain sentencing enhancements applicable to that statute were actually elements of the charged offense. Id. at 239. The Court noted that its decision was based on the concern that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in the indictment, submitted to a jury, and proven beyond a reasonable doubt." Id. at 243 n.6.

Dyess argues that, based on Jones, a reasonably prudent attorney would have raised the argument that drug weight was an element of the offense under § 841(b) that had to be indicted and tried to the jury. Dyess' claim is foreclosed by precedent. In United States v. McNamara, 74 F.3d 514, 516 (4th Cir. 1996),

16

we held that "an attorney's failure to anticipate a new rule of law was not constitutionally deficient." In that case, we rejected the contention that counsel was ineffective "for failing to preserve an issue at trial based merely on the Supreme Court's grant of certiorari in a case which raised the issue." Id. See also Lewis v. Wheeler, 609 F.3d 291, 310 (4th Cir. 2010) (finding no ineffective assistance for failing to make argument that was not necessarily forecasted by Supreme Court decision and would have represented an extension of that decision).

Jones was decided after Dyess' superseding indictment but prior to his guilty plea and sentencing. At the time Jones was decided, "every federal circuit court considered drug quantity to be a sentencing factor," United States v. Sanders, 247 F.3d 139, 147 (4th Cir. 2001), a view courts adhered to even after Jones, see United States v. Taylor, 210 F.3d 311, 320 (5th Cir. 2000); United States v. Smith, 205 F.3d 1336, 2000 WL 139250 (4th Cir. 2000) (unpublished). Indeed, it was the "universal practice" to contest drug weights at sentencing. United States v. Carrington, 301 F.3d 204, 212 (4th Cir. 2002). We did not extend Jones and Apprendi to § 841(b) until 2001, more than two years after Dyess' sentencing. See Promise, 255 F.3d at 156-57. Accordingly, Dyess' counsel was not deficient by failing to anticipate Apprendi.

Moreover, Dyess again cannot show that any (assumed) deficient performance by trial counsel prejudiced him. As the Government notes, if Dyess had raised this objection, the Government could have simply issued a superseding indictment with drug weights or proceeded under a criminal information. Given the overwhelming evidence in support of the drug weights, there was no obstacle to pursuing either course. In addition, as previously discussed, pleading guilty and offering substantial assistance was, objectively, Dyess' best option to avoiding a potential term of life imprisonment.

B.

Dyess' final two claims allege that remand counsel was ineffective. We find both of these claims to be without merit.

1.

Dyess first argues that remand counsel failed to call all of the necessary witnesses at the evidentiary hearing involving Hart's misconduct. As noted above, in Dyess' direct appeal, we remanded for appropriate proceedings. On remand, Dyess moved for, among other relief, a resentencing. The district court granted an evidentiary hearing to address any taint at the sentencing, but "defer[red] decision on Defendants' motion for resentencing until after the evidentiary hearing." (J.A. 577). The only witnesses whose testimony was possibly tainted by Hart's misconduct were Rader, Hart, Hart's partner Detective

18

Henderson, Lori Cummings (Dyess' girlfriend), and Benjamin Green.[8]

At the opening of the hearing the district court (Judge Faber) reiterated the hearing's limited scope:

> [I]t seems to me the inquiry is really pretty simple. Maybe I'm oversimplifying things, but we have a record of the sentencing, we have a record of the evidence that was before Judge Haden that he based his ruling on. It seems to me that my task—and you can correct me if you disagree with this, and I hope you will. My task is to look at that in the light of what we know now and see if he relied, to any extent, on any of the information that we now know to be false or tainted [ ... ] It seems to me that's the simple inquiry. And we know—we have a record of what he looked at, we have a record of the information that's come to light since then, and the issue is whether the bad information was considered by him or not.

(J.A. 590).

At the evidentiary hearing, Dyess' counsel called Rader, Hart, Henderson, Cummings, Green,[9] and the probation officer. The AUSA who originally prosecuted Dyess also testified. Thus, all of the witnesses relevant to the <u>evidentiary</u> hearing were called. Dyess' claim is targeted at the fact that the

---

[8] Cummings and Green filed affidavits on Dyess' behalf alleging that their prior testimony against Dyess at his earlier sentencing (Green) and at the grand jury (Cummings) was fabricated and that Hart engaged in misconduct with them. Both Cummings and Green recanted these affidavits, however, and admitted that Dyess instructed them to sign and file them.

[9] Green ultimately did not testify; the district court, however, took judicial notice of the fact that "Green had subsequently recanted the affidavit" and "entered into a plea agreement." (J.A. 752).

19

evidentiary hearing was limited in scope and did not encompass all of the voluminous testimony from his first sentencing hearing. That was the district court's decision, one which we affirmed on direct appeal.

Moreover, we give counsel wide latitude in determining which witnesses to call as part of their trial strategy. See Wilson v. Greene, 155 F.3d 396, 404 (4th Cir. 1998) (quoting Pruett v. Thompson, 996 F.2d 1560, 1571 n. 9 (4th Cir. 1993)) ("Decisions about what types of evidence to introduce 'are ones of trial strategy, and attorneys have great latitude on where they can focus the jury's attention and what . . . evidence they can choose not to introduce.'"). Here, even now, Dyess offers nothing more than speculative conclusions in explaining who remand counsel failed to call and what aid their testimony would have provided to Dyess' case. Given the limited scope of the evidentiary hearing, and the deference afforded to counsel in making strategic decisions, Dyess cannot show remand counsel was deficient on this ground.

2.

Dyess' second allegation against remand counsel fares no better. Dyess contends that remand counsel failed to "effectively challenge" his guilty plea on remand. Dyess moved to withdraw his guilty plea on remand, arguing that it was not knowing and voluntary and that the Government breached the

20

agreement. The district court denied this motion, and we affirmed. Dyess I, 478 F.3d at 237. We found that Dyess' motion was "post-sentencing" and could succeed only if the "underlying plea proceedings were marred by a fundamental defect that inherently resulted in a complete miscarriage of justice, or in omissions inconsistent with rudimentary demands of fair procedure." Id. (internal quotation marks omitted). Applying this standard, we affirmed the denial of the motion. Importantly, we rejected Dyess' claim that his plea was unknowing because he faced a life sentence and because trial counsel failed to uncover the Hart/Rader relationship.

In his § 2255 motion, Dyess claimed ineffectiveness on this ground because his remand counsel should have based the withdrawal motion on "several lies" that his trial counsel told him. Dyess II, 2011 WL 3667528, at *11. The district court rejected this ground by recounting that Dyess did move to withdraw his plea on remand, and that his § 2255 motion was unsupported by anything but conjecture about the supposed "lies" from counsel. Before us, Dyess now argues that his plea should have been attacked under Apprendi. Dyess, however, did not raise this claim to the district court. United States v. Muth, 1 F.3d 246, 250 (4th Cir. 1993) (court of appeals will not address contentions raised for the first time on appeal).

21

Moreover, even assuming the claim is properly before us, it fails on the merits because Dyess cannot show prejudice. Although Dyess' counsel did not raise Apprendi as a ground for withdrawing his guilty plea, Dyess, acting pro se, did raise that argument, and the court rejected it. (J.A. 561) (noting "[Dyess] argues pro se that his plea was not knowing because no drug quantity was stated in the indictment" and rejecting the argument in light of Cotton). Dyess has not shown how that result would have differed if counsel had made the argument, and it is unclear that it would have. See United States v. Martinez, 277 F.3d 517, 533 (4th Cir. 2002) (declining to recognize Apprendi error during Rule 11 colloquy because plea resulted in significant benefits to defendant, indicating no reasonable belief that defendant would have withdrawn plea). This claim thus also lacks merit.

V.

For the foregoing reasons, we affirm the district court's denial of Calvin Dyess' § 2255 motion.

AFFIRMED

**GREGORY, Circuit Judge, dissenting as to Part III:**

When we decided this case in 2007 on direct appeal, the Supreme Court had made clear that any fact increasing the maximum penalty for a crime must be charged in the indictment. United States v. Cotton, 535 U.S. 625, 627 (2002); Apprendi v. New Jersey, 530 U.S. 466, 476 (2000); Jones v. United States, 526 U.S. 227, 243 n.6 (1999). We consider this part of the constitutional test under Apprendi. United States v. Promise, 255 F.3d 150, 156-57 (4th Cir. 2001) (en banc). In his argument before this Court on direct appeal, Dyess contended there was Apprendi error because the indictment failed to allege the drug quantity that increased his maximum sentence to life imprisonment. On direct appeal, we did not discuss nor decide whether the indictment itself was defective under Apprendi. United States v. Dyess, 478 F.3d 224 (4th Cir. 2007). The majority insists today that our muteness was in fact a decision sub silentio against Dyess on his Apprendi argument. I certainly agree with the majority that "a criminal defendant cannot 'recast, under the guise of collateral attack, questions fully considered by this court [on direct appeal].'" Ante 10 (quoting Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976)) (emphasis added). However, we did not "fully

23

consider" Dyess's Apprendi argument.[1] We conducted an analysis of Dyess's argument under United States v. Booker, 543 U.S. 220 (2005), a progeny of Apprendi. See Dyess, 478 F.3d at 240. But, beyond noting that Dyess raised an Apprendi challenge, we did not address his straightforward argument that the indictment violated Apprendi for failing to allege a drug quantity.

The omission is particularly odd given that Judge Haden recognized the viability of Dyess's argument. When we first remanded this case for further proceedings after the revelations of government misconduct, Judge Haden explained that "[b]ecause the superseding indictment in these cases did not state a drug quantity, at any resentencing this Court is limited to the twenty-year statutory maximum of § 841(b)(1)(C)." United States v. Dyess, 293 F. Supp. 2d 675, 693 (S.D. W. Va. 2003). I would find that our silence on the matter in such an extraordinary case was an oversight that permits us to proceed with a full analysis on habeas review.

---

[1] Of course, it is true that a court need not explicitly address each and every argument to decide and dispense of that argument. See Malbon v. Penn. Millers Mut. Ins. Co., 636 F.2d 936, 939 n.8 (4th Cir. 1980) (explaining that it is not "absolutely necessary" that a court specifically recite and discuss each argument advanced by the parties). However, there is nothing that requires that we interpret a court's silence on an argument as a decision rejecting the argument on its merits.

Even though the majority holds that Dyess cannot raise his _Apprendi_ claim in his habeas petition, it offers an analysis of the merits of the claim. That analysis begins with the assertion that we should apply plain error review because "Dyess waited until the remand from this court to raise the issue . . . ." Ante 10. The majority treats this case as if it was a run-of-the-mill drug prosecution, giving insufficient weight to misconduct by the lead investigator and key witness for the prosecution. Our remand in response to revelations of this pervasive misconduct amounted to pressing a reset button -- it thrust the case back into a pre-sentencing posture. Because Dyess raised his _Apprendi_ argument with particularity while the case was in this pre-sentencing posture, we are obliged to apply the harmless error standard of review. Fed. R. Crim. P. 52(a); _United States v. Robinson_, 460 F.3d 550, 557 (4th Cir. 2006).

Under the harmless error standard, a defendant is "entitled to relief if the error has affected his substantial rights." _United States v. Rodriguez_, 433 F.3d 411, 416 (4th Cir. 2006). Significantly, under harmless error review, the government bears the burden of establishing that the error did not affect the defendant's substantial rights. _Id._ Because _Apprendi_ error is constitutional in nature, the government must establish that it was harmless beyond a reasonable doubt. _See_ _Chapman v. California_, 386 U.S. 18, 24 (1967); _United States v. Mackins_,

25

315 F.3d 399, 405 (4th Cir. 2003) (applying the <u>Chapman</u> burden to <u>Apprendi</u> error).

When a sentence violates <u>Apprendi</u> because the underlying indictment fails to allege drug quantities sufficient to raise the maximum sentence, a defendant's substantial rights are violated. <u>Promise</u>, 255 F.3d at 160. Here, the indictment did not allege a drug quantity. As Judge Haden indicated, Dyess's maximum sentence should therefore have been twenty years, not life.

Because the government assumes that plain error review should apply, it makes no explicit attempt on appeal to carry its high burden of proving that the error was harmless beyond a reasonable doubt. However, the government argues that Dyess's admissions in his plea agreement offer adequate support for his life sentence. Normally, a defendant's admission of requisite drug quantities in a plea agreement cures <u>Apprendi</u> error in the indictment. <u>See, e.g.</u>, <u>United States v. Flagg</u>, 481 F.3d 946, 950 (7th Cir. 2007); <u>United States v. Silva</u>, 247 F.3d 1051, 1060 (9th Cir. 2001). But, once again, this is far from being a normal case. Judge Haden, who had been on the bench for some thirty-four years before he passed away, observed upon remand that "[t]his case presents questions of ethical conduct and the appearance of impropriety . . . unprecedented in this Court's experience. The lead AUSA who prosecuted this case also managed

26

case agents and witnesses who allegedly (and by their own admissions) stole drug proceeds, suborned perjury, lied under oath, and tampered with witnesses." United States v. Dyess, 231 F. Supp. 2d 493, 495 (S.D. W. Va. 2002). The lead investigator made a full-fledged and successful effort to woo Dyess's wife, Ursula Rader, even marrying her after Dyess was sentenced. J.A. 624. He literally crafted exhibits to illustrate drug quantity that Rader and he referred to while giving testimony at Dyess's sentencing hearing. J.A. 621-23.

After learning of the lead investigator's misconduct, we remanded the case for further proceedings. J.A. 508. Rather than testify at an evidentiary hearing designed to gauge the impact his misconduct had on the evidence, the lead investigator claimed his Fifth Amendment right to remain silent. Amazingly, it appears the government did not compel his testimony by providing immunity. Nor did the government compel testimony after he entered a guilty plea to the charge against him -- misappropriation of government funds of $1,000 or less.[2] As a result, we have never truly learned the extent to which his misconduct tainted the evidence against Dyess.

---

[2] At oral argument, the government was unable to provide any clarity regarding the prosecution of the lead investigator other than that he pled guilty to this charge.

27

Given that Dyess's admissions took place in the context of rampant government wrongdoing, they should not prevent us from noticing _Apprendi_ error. The fairness of a plea goes well beyond a question of guilt or innocence. _See_ Stephanos Bibas, _Regulating the Plea-Bargaining Market:  From Caveat Emptor to Consumer Protection_, 99 Cal. L. Rev. 1117, 1139-40 (2011). When a defendant makes a decision to plea, he must weigh the "advantages and disadvantages of a plea agreement" against other possible scenarios. _See_ _Padilla v. Kentucky_, 130 S. Ct. 1473, 1484 (2010).  Here, the appearance of advantages and disadvantages was warped by rife government misconduct. As such, Dyess's admission to drug quantity should not be dispositive in our _Apprendi_ analysis.

Even if plain error applies to this case, as the majority contends, _Cotton_ does not control the outcome. The majority correctly explains that in _Cotton_, the Supreme Court declined to notice plain error under the fourth prong of the test put forward in _United States v. Olano_, 507 U.S. 725, 732 (1993), because evidence of drug quantity was "overwhelming," and "essentially uncontroverted." Ante 11 (quoting _Cotton_, 535 U.S. at 633).  Ultimately, the _Cotton_ Court found that while there may have been plain _Apprendi_ error, there was "no basis for concluding that the error seriously affected the fairness,

28

integrity, or public reputation of judicial proceedings." Cotton, 535 U.S. at 632-33.

Unlike in Cotton, the pervasive nature of the misconduct committed by the government in this case has discredited a substantial amount of the evidence against Dyess. For instance, Rader admitted that she lied when she testified that she created the demonstrative exhibits illustrating the quantity of drugs she had observed Dyess handle. See J.A. 89-94, 621-24. As mentioned above, the lead investigator created those exhibits. J.A. 621. He then coached Rader on how to testify about the exhibits, and became angry and abusive when she told him she could not remember or did not know how much drugs she had seen. J.A. 623-24.

While we may have affirmed the district court's finding that sufficient untainted evidence remained to sustain the conviction, it is undeniable that government misconduct in this case severely weakened the evidence against Dyess. The remaining untainted evidence is not "overwhelming" and "essentially uncontroverted." See Cotton, 535 U.S. at 633. Further, it is hypocrisy of the first order for the government to proclaim that we should not notice plain error because there has been no damage to the "fairness, integrity or public reputation of judicial proceedings." See id. The lead investigator's behavior and misconduct undermined the judicial

29

proceedings in this case. The best way for the prosecution to repair that damage would have been to concede to re-sentencing in a conciliatory effort to condemn this mess to history. Instead, the government charges headlong towards securing a life sentence under these troubling circumstances. I cannot condone this. I respectfully dissent.