PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-2

ERROL DUKE MOSES,

Petitioner – Appellant,

v.

CARLTON JOYNER, Warden, Central Prison,

Respondent – Appellee.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Thomas D. Schroeder, District Judge. (1:03-cv-00910-TDS-LPA)

Argued: January 26, 2016        Decided: March 8, 2016

Before TRAXLER, Chief Judge, and WILKINSON and NIEMEYER, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Chief Judge Traxler and Judge Niemeyer joined.

**ARGUED**: Shelagh Rebecca Kenney, CENTER FOR DEATH PENALTY LITIGATION, Durham, North Carolina, for Appellant. Peter Andrew Regulski, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee. **ON BRIEF**: Kenneth J. Rose, CENTER FOR DEATH PENALTY LITIGATION, Durham, North Carolina, for Appellant. Roy Cooper, Attorney General of North Carolina, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee.

WILKINSON, Circuit Judge:

Appellant Errol Moses challenges the district court's denial of his motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(6). He argues that the court abused its discretion in finding that the motion was untimely under Rule 60(c). He further contends that the trial court erred in concluding that the change in post-conviction procedural default rules fashioned by Martinez v. Ryan, 132 S. Ct. 1309 (2012), and Trevino v. Thaler, 133 S. Ct. 1911 (2013), did not constitute the kind of "extraordinary circumstance" needed to reopen his case. For the reasons that follow, we affirm.

I.

On November 14, 1997, a North Carolina jury convicted Moses of two counts of first-degree murder for the killings of Ricky Griffin and Jacinto Dunkley. State v. Moses, 350 N.C. 741, 745-50, 517 S.E.2d 853, 857-60 (1999). In the early morning hours of November 25, 1995, Moses had visited Griffin's house to follow up on a drug sale and fired three shots at Griffin's head, two "from a range of approximately two feet or less." Id. at 746. Two months later, on January 27, 1996, Moses drove to Dunkley's home in a stolen vehicle and threatened Dunkley with a handgun, demanding to know where Dunkley hid his money. Id. at 747-50. When Dunkley failed to respond, Moses shot him once in the chest

2

and once in the head. Id. Several days after the second murder, while incarcerated on other charges, Moses contacted two people in an attempt to conceal his murder weapon, which was nonetheless later seized by police. Id.

Following Moses' capital sentencing hearing, the jury recommended, and the trial court imposed, two death sentences. The state supreme court affirmed Moses' conviction, and the United States Supreme Court denied his petition for writ of certiorari. See State v. Moses, 350 N.C. 741, 517 S.E.2d 853 (1999), cert. denied, 528 U.S. 1124 (2000). Moses filed a "Motion for Appropriate Relief" (MAR) in the trial court, alleging that he had been deprived of his Sixth Amendment right to effective assistance of trial and appellate counsel. The North Carolina courts rejected his claims. State v. Moses, 356 N.C. 442, 573 S.E.2d 160 (2002).

The procedural trail then becomes lengthy indeed. On November 3, 2003, Moses filed a federal habeas petition under 28 U.S.C. § 2254 in the United States District Court for the Middle District of North Carolina. He argued that his counsel provided constitutionally deficient representation during the guilt and penalty phases of trial. J.A. 370-411. Moses also asserted that the inadequate performance of his post-conviction counsel excused any procedural default of his ineffective-assistance-of-trial-counsel claims. Id.

3

The case was assigned to a magistrate judge who recommended that Moses' petition be denied. J.A. 565-600. Specifically, the recommendation noted that Moses "attempt[ed] to drastically broaden," J.A. 591, the allegations contained in his MAR by "mov[ing] well beyond a claim of failure to present evidence to one of a failure to investigate." J.A. 593. The magistrate judge concluded that the newly-raised matters were both unexhausted and procedurally barred. Hoping to remedy those infirmities before the district court issued its order, Moses filed a second MAR in the state trial court. His motion was ultimately rejected. J.A. 622-23. The district court adopted the magistrate's recommendation on October 18, 2005, and this court affirmed. The Supreme Court denied certiorari. Moses v. Branker, No. 06-8, 2007 WL 3083548 (4th Cir. Oct. 23, 2007), cert. denied, 554 U.S. 924 (2008).

Moses filed yet a third MAR with the state trial court on October 1, 2009. He argued that the state violated the Due Process Clause of the Fourteenth Amendment when it failed to disclose an immunity agreement with a witness who testified against Moses at trial. Moses also claimed that the state knowingly refused to correct false testimony. After conducting an evidentiary hearing, the court once again denied his motion. Moses unsuccessfully petitioned the North Carolina Supreme Court for review. State v. Moses, 365 N.C. 93, 706 S.E.2d 246 (2011).

4

On September 23, 2011, Moses filed a motion under Rule 60(b) for relief from the district court's October 2005 order dismissing his federal habeas petition. He raised the same allegations presented in his third MAR. The district court determined that the motion should be treated as a successive habeas petition, and accordingly transferred the matter to this court for pre-filing authorization. We denied authorization for the successive habeas litigation. In re Moses, No. 13-1 (4th Cir. Feb. 7, 2013).

Meanwhile, on March 20, 2012, the Supreme Court held in Martinez that a procedural default under state law will not bar a federal habeas court from hearing an ineffective-assistance-of-trial-counsel (IATC) claim if a prisoner's attorney ineffectively failed to raise the IATC claim in the initial state collateral proceedings. See 132 S. Ct. at 1315-20. About fourteen months later, the Court decided Trevino, which extended the Martinez exception to the customary rules of procedural default to cases in which state procedure did not require a petitioner to raise an ineffectiveness claim initially on collateral review but nonetheless made it "highly unlikely" that a criminal defendant would have a meaningful opportunity to raise that claim on direct appeal. See 133 S. Ct. at 1921.

Moses filed a second motion for relief from judgment pursuant to Rule 60(b) in the district court on

5

August 19, 2014 -- nearly fifteen months after the Supreme Court handed down Trevino. Moses argued below, and maintains on appeal, that the change in decisional law worked by Martinez and Trevino represents the kind of "extraordinary circumstance" justifying relief from judgment under 60(b)(6). J.A. 624-32. He asserts that because the "allegations regarding [his] trial counsel's failure to adequately investigate and present mitigating evidence . . . fall within the Martinez exception," his ineffective-assistance-of-trial-counsel claims are not procedurally forfeited, and the district court's decision dismissing his federal habeas petition should be vacated. Id. at 629. The court below held that Moses' motion was not only untimely under Rule 60(c), but that a change in habeas decisional law, without more, is an insufficient basis for 60(b)(6) relief. Id. at 706-21. We granted a certificate of appealability, and this appeal ensued.

## II.

We first address whether Moses' Rule 60(b)(6) motion for relief from judgment on the basis of Martinez and Trevino satisfies the timeliness requirement under Rule 60(c). We think the district court acted well within its discretion in finding the motion untimely. J.A. 722-25. Rule 60(c)(1) requires that 60(b) motions "be made within a reasonable time," Fed. R. Civ. P. 60(c)(1), and the movant bears the burden of showing

6

timeliness. Werner v. Carbo, 731 F.2d 204, 206-07 & n.1 (4th Cir. 1984). Moses' 60(b) motion is predicated on a change in habeas procedural law established in Martinez, 132 S. Ct. 1309, and later clarified in Trevino, 133 S. Ct. 1911. The Supreme Court decided Martinez on March 20, 2012, and Trevino on May 28, 2013.

Nonetheless, appellant waited until August 19, 2014 to file the 60(b) motion at issue here. J.A. 624-34. This was nearly two-and-a-half years after Martinez and fifteen months after Trevino. Such a delay would be inordinate under any circumstances. This delay is especially inexplicable in view of the fact that Moses had presented his claim asserting ineffective assistance of trial counsel in federal court and was procedurally barred for having failed to raise it in state post-conviction proceedings. In other words, Moses was on high alert as to the relevance of Martinez to his case given that he had earlier pressed in federal habeas proceedings the exact argument eventually adopted in Martinez: that ineffectiveness of post-conviction counsel constitutes cause for procedural default. Waiting well over two years after Martinez and a year after Trevino to bring that argument before the district court in his 60(b) motion understandably struck that court as excessively delayed under Rule 60(c).

7

What is more, Moses had filed an earlier 60(b) motion on September 23, 2011, which was pending when Martinez came down. Def.'s Mot., ECF No. 58. That 60(b) motion raised two issues, that the state allowed false testimony and concealed an alleged immunity agreement with a government witness, neither of which related to procedural default of his ineffectiveness claim. Id. Yet Moses never tried to amend that pending motion to allege his trial counsel's ineffective assistance in light of the change in procedural default rules.

We can hardly fault the district court for an abuse of discretion in ruling that Moses' delay was well beyond the bounds of reasonableness set forth in Rule 60(c). Courts have ruled Martinez-based 60(b) motions untimely in cases involving shorter delays than that present here. E.g., Taylor v. Wetzel, No. 4:CV-04-553, 2014 WL 5242076, at *8 (M.D. Pa. Oct. 15, 2014) (filing one year and a day after Martinez untimely); Henness v. Bagley, No. 2:01-cv-043, 2013 WL 4017643, at *11 (S.D. Ohio Aug. 6, 2013) (filing one year after Martinez untimely). In fact, Moses refers us to no case where a delay as long as his was deemed timely under Rule 60(c).

Appellant claims, however, that the starting point for the timeliness inquiry should not be Martinez v. Ryan, but rather Fowler v. Joyner, a Fourth Circuit case decided over two years later. 753 F.3d 446 (4th Cir. 2014). In Fowler, this court

8

addressed how North Carolina's post-conviction procedural scheme fit within the new Martinez-Trevino framework. Id. at 462-63. But Moses was in no way required to await the Fowler decision before filing a new 60(b) motion or amending his existing 60(b) motion to assert his Martinez-based claim. The barrier facing appellant was always the procedural default of his ineffective-assistance-of-counsel claim, a barrier that Martinez specifically lifted. 132 S. Ct. at 1320. The operative date for the timeliness inquiry is therefore Martinez and not Fowler.

To conclude that the operative date was anything other than Martinez would permit those filing 60(b) motions to wait indefinitely, shifting the starting point for determining timeliness forward with every case that in some way related to an earlier on-point Supreme Court decision. Fowler itself frowned on any such tactic. In fact, Fowler discussed a Fourth Circuit decision that further clarified Martinez, Juniper v. Davis. Fowler, 753 F.3d at 461-62 (citing 737 F.3d 288 (4th Cir. 2013)). Our court treated Martinez, and not the inevitable later elaborative decision by a lower court, as the operative change in habeas law. See id. at 460-62. That approach is consistent with the particular emphasis that AEDPA and other statutes governing relief from final judgments place on changes in law by the Supreme Court. See, e.g., 28 U.S.C. § 2254(e)(2)(A)(i) (referring to "a new rule of constitutional law, made

retroactive to cases on collateral review by the Supreme Court"); 28 U.S.C. § 2255(h)(2) (same).

In reaching our conclusion on timeliness, we remain sensitive to the fact that standards such as "reasonable time," "excusable neglect," and "good cause shown" reflect the considerable latitude of judgment our system reposes in trial courts. Were we to reverse the district court's ruling here as an abuse of discretion and accept as timely a motion filed two-and-a-half years after the appellant knew or should have known the basis for his 60(b) claim, the "reasonable time" limitation in Rule 60(c)(1) would quickly lose all meaning. Movants would be free to re-litigate matters years after their judgments had become final and years after every subsequent change in law that even arguably brought relief. We decline to so erode the "principle of finality . . . essential to the operation of our criminal justice system" and the respect we owe to state court judgments. Teague v. Lane, 489 U.S. 288, 309 (1989).

### III.

### A.

Appellant's problem with untimeliness is but the first of many hurdles. The question remains whether he met the standard for relief under Rule 60(b)(6). Rule 60(b) establishes grounds for relief from a final judgment "under a limited set of circumstances including fraud, mistake, and newly discovered

10

evidence." Gonzalez v. Crosby, 545 U.S. 524, 528 (2005). In addition to the specific categories for relief in 60(b)(1)-(5), 60(b)(6) offers a catch-all provision that allows a court to "relieve a party or its legal representative from a final judgment, order, or proceeding" for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6).

Finding himself ineligible for any of the specific grounds for relief in 60(b)(1)-(5), Moses rests his present motion on the open-ended language of 60(b)(6). That provision, however, has been firmly reined in by the Supreme Court. In Gonzalez v. Crosby, the Court addressed a situation similar to the present case: a 60(b) motion seeking to reopen a district court judgment dismissing a federal habeas petition as time-barred by AEDPA's statute of limitations. 545 U.S. 524. The movant in Gonzalez relied on a favorable change in habeas decisional law handed down by the Supreme Court after the district court decision. Id. at 527 (citing Artuz v. Bennett, 531 U.S. 4 (2000)). Despite the change in procedural law, Gonzalez made clear that 60(b)(6) is not ordinarily available to those challenging previously denied habeas relief. To the contrary, a showing of "extraordinary circumstances" is required for a successful 60(b)(6) motion. 545 U.S. at 535; accord Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 864 (1988) (quoting Ackerman v. United States, 340 U.S. 193, 199 (1950)).

11

As the word "extraordinary" suggests, "not every interpretation of the federal statutes setting forth the requirements for habeas provides cause for reopening cases long since final." Id. at 536. Underlying the Court's concern was the reality that changes in the habeas statutes and in the judicial interpretation of habeas procedural rules are relatively common. See id. at 536-37. Each new twist and turn runs the risk of producing a tidal wave of 60(b) motions, just as Martinez has done throughout the lower courts. Further, the potential for 60(b) motions to "impermissibly circumvent the requirement[s]" for securing relief under AEDPA was evident. Id. at 532. The prospect of having the open-ended language of Rule 60(b)(6) supplant the specific habeas constraints in AEDPA, see 28 U.S.C. § 2254(b)-(i), led the Gonzalez Court to this conclusion: The "extraordinary circumstances" required for relief under 60(b)(6) would "rarely occur in the habeas context." 545 U.S. at 535.

In light of Gonzalez's cabined conception of Rule 60(b)(6) in the habeas context, Moses' motion for relief invoking the change in procedural default rules occasioned by Martinez falls well short of "extraordinary." In fact, Moses' ground for reopening judgment under 60(b)(6) is not extraordinary for the same reasons Gonzalez's was not extraordinary. Moses argues that "[t]he intervening change in law represented by Martinez . . . directly overruled the decision [of the district

12

court] for which reconsideration has been sought," thus warranting relief from judgment under 60(b). J.A. 631. But that is precisely the line of reasoning the Supreme Court rejected in Gonzalez. 545 U.S. at 536 ("Petitioner's only ground for reopening the judgment denying his first federal habeas petition is that our decision in Artuz showed the error of the District Court's statute-of-limitations ruling."). If the change in habeas decisional law at issue in Gonzalez cannot pass as an extraordinary circumstance, then the change here should not fare any better.

Moreover, Gonzalez was hardly a groundbreaking result. We too have held that "a change in decisional law subsequent to a final judgment provides no basis for relief under Rule 60(b)(6)." Dowell v. State Farm Fire & Cas. Auto. Ins. Co., 993 F.2d 46, 48 (4th Cir. 1993) (citing Hall v. Warden, Md. Penitentiary, 364 F.2d 495, 496 (4th Cir. 1966) (en banc)). In Hall v. Warden, for instance, we denied the state's 60(b) motion after a Supreme Court ruling undermined our prior judgment granting post-conviction relief, noting that the matter "should not be reopened merely upon a showing of inconsistency with [the Supreme Court] decision." 364 F.2d at 496.

Indeed, the law on this issue reflects an admirable consistency, as the decisions of other circuits attest. See Arthur v. Thomas, 739 F.3d 611, 631 (11th Cir. 2014) (declaring

13

that "the change in the decisional law effected by the Martinez rule is not an 'extraordinary circumstance' sufficient to invoke Rule 60(b)(6)"); Nash v. Hepp, 740 F.3d 1075, 1078-79 (7th Cir. 2014) (affirming the denial of petitioner's Rule 60(b)(6) motion since he presented "the 'mundane' and 'hardly extraordinary' situation in which the district court applied the governing rule of procedural default at the time of its decision and the caselaw changed after judgment became final"); McGuire v. Warden, Chillicothe Corr. Inst., 738 F.3d 741, 750-51 (6th Cir. 2013) (holding that the change in procedural default rules worked by Trevino and Martinez is not an exceptional circumstance justifying Rule 60(b)(6) relief because those cases did not alter the constitutional rights of criminal defendants); Adams v. Thaler, 679 F.3d 312, 319 (5th Cir. 2012) (noting that a "change in decisional law after entry of judgment does not constitute exceptional circumstances and is not alone grounds for relief from a final judgment under Rule 60(b)(6)" (quoting Bailey v. Ryan Stevedoring Co., 894 F.2d 157, 160 (5th Cir. 1990))). Moreover, even those circuit cases referenced by Moses are peppered with cautionary language, underscoring that "the jurisprudential change rendered by Martinez, without more, does not entitle a habeas petitioner to Rule 60(b)(6) relief." Cox v. Horn, 757 F.3d 113, 124 (3d Cir. 2014). We have no authority to depart from the rulings of the Supreme Court or our own, and we

see no reason to depart from the gravamen of national circuit law.

IV.

The requirements of timeliness and of "extraordinary circumstances" are not the only obstacles impeding Moses from securing relief under Rule 60(b)(6). Martinez emphasized that a petitioner's ineffective-assistance-of-trial-counsel claim must be a colorable one before post-conviction counsel can be deemed ineffective for failing to raise it. See 132 S. Ct. at 1318 (requiring that the underlying ineffectiveness claim be "substantial"). Citing that language, the government urges us to make the additional holdings that Moses' counsel was not ineffective at trial or sentencing, that there was no ineffective assistance of post-conviction counsel for failing to raise the IATC claim, and that in all events there was no prejudice to Moses given the strength of the state's case. We decline, however, to reach those issues other than to note that this case has long ago reached the point of churning procedures without prospect of practical effect. The road to relief stretches some distance, and Moses has faltered at the initial steps. For the foregoing reasons, the judgment of the district court is

AFFIRMED.

15