**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-6906

UNITED STATES OF AMERICA,

          Plaintiff - Appellee,

    v.

MARIO SALAS,

          Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Henry E. Hudson, Senior District Judge. (3:98-cr-00166-HEH-1)

Argued: December 10, 2019          Decided: March 23, 2020

Before DIAZ and QUATTLEBAUM, Circuit Judges, and Max O. COGBURN, Jr., United States District Judge for the Western District of North Carolina, sitting by designation.

Affirmed by unpublished opinion. Judge Cogburn wrote the opinion, in which Judge Diaz and Judge Quattlebaum joined.

**ARGUED:** Sarah Ray Bennett, MCGUIREWOODS, LLP, Richmond, Virginia, for Appellant. Daniel Taylor Young, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Matthew Allen Fitzgerald, MCGUIREWOODS, LLP, Richmond, Virginia; Nicholas Richard Klaiber, Kelly Marie Morrison, CAPITAL ONE, Richmond, Virginia, for Appellant. G. Zachary Terwilliger, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

COGBURN, District Judge:

Appellant Mario Salas challenges the district court's denial of his Rule 60(b) motion.

For the following reasons, we affirm.

I.

In June 1998, a grand jury sitting in Richmond, Virginia, indicted Salas and his half-brother on a single count of conspiring to distribute heroin, in violation of 21 U.S.C. §§ 846 and 841. Under § 841(b)(1)(C), conspiring to distribute any amount of heroin is punishable by not more than 20 years' incarceration, whereas under § 841(b)(1)(A), conspiring to distribute one kilogram or more of heroin is punishable by a mandatory minimum of 10 years' incarceration and a maximum term of life imprisonment. While the indictment did not allege that the defendants conspired to distribute any specific quantity of heroin, it put the defendants on notice that the amount was substantial by seeking forfeiture of $1 million in drug proceeds. J.A. 15.

Before trial, the government met with Salas, previewed its evidence, and offered him a plea bargain whereby he would admit to conspiring to distribute approximately 1.5 kilograms of heroin. Salas rejected the offer and proceeded to trial. J.A. 35–38. After two days of testimony, a jury found him guilty. J.A. 6 (ECF Nos. 67–68). Salas was represented at trial by Peter Eliades, who was appointed under the Criminal Justice Act. J.A. 3 (ECF No. 6).

The government's trial evidence established that Salas oversaw a heroin distribution organization headquartered in Brooklyn and run out of his restaurant, El Olympico, and his

3

night club, called "the 880 Club." Suppl. App. ("S.A.") 22–23, 42, 54, 194–95, 226–27. Salas and his co-conspirators supervised numerous transporters and distributors whom they directed to travel to, and take up residence in, the Richmond area to sell heroin. Salas's drug-runners transported heroin to Virginia in hollowed-out candles, stuffed animals, and, in several instances, a machine designed to treat a child's asthma. S.A. 31–32, 35–37, 80–82, 218–19, 230, 254.

The government called thirteen witnesses, several of whom testified about the quantity of heroin involved in the conspiracy. Patricio Mateo testified that, at Salas's direction, he transported 500 grams of heroin from New York to Richmond between three and four times per month between June and November 1997. S.A. 29–30, 32. That conservatively amounts to about nine kilograms.[1] Mateo also testified that selling 400 grams of heroin resulted in proceeds of about $50,000, S.A. 56, meaning that the $1 million in drug money sought as forfeiture in the indictment was equivalent to around eight kilograms. Marcellus Brandon testified that he helped Salas's dealers in Richmond distribute about two to three ounces of heroin per day for about eight months. S.A. 149–150. Assuming, conservatively, that two ounces were distributed each weekday, this amounts to just under nine kilograms.[2] In addition to the significant drug weight described by Mateo and Brandon, Dwayne Jefferson testified that he (or others acting on his behalf)

---

[1] 0.5 kilograms x 3 shipments per month x 6 months = 9 kilograms.
[2] 2 ounces x 28 grams per ounce x 20 weekdays per month x 8 months = 8.96 kilograms. *See United States v. Jeffers*, 570 F.3d 557, 570 (4th Cir. 2009) (noting that one ounce is about 28 grams).

4

purchased between one and two ounces of heroin every three or four days for four months from an apartment in Richmond for re-distribution, sometimes with Salas present. S.A. 177–180, 183–84. This amounts to an additional 840 grams.[3]

After the government rested, Salas moved for a judgment of acquittal, and the district court denied the motion. S.A. 275–78. Salas called no witnesses. After the parties delivered their closing arguments, S.A. 281–304, and the district court instructed the jury, S.A. 304–24, the jury deliberated for less than an hour before it returned a verdict of guilty, S.A. 325–26.

In advance of Salas's sentencing, the Probation Office prepared a Presentence Investigation Report ("PSR"). The PSR identified several instances in which members of the conspiracy distributed more than one kilogram of heroin. *See, e.g.*, J.A. 227 ¶ 11 (estimating that Dwayne Jefferson sold at least 1.27 kilograms of heroin for the conspiracy); J.A. 228 ¶ 13 (estimating that Patricio Mateo sold over 17 kilograms). The PSR ultimately concluded that Salas was accountable for the distribution of 31.44 kilograms of heroin. J.A. 234 ¶ 44. It further described Salas as "the leader of the organization" who was "responsible for the purchasing, packaging, and transporting of heroin to Richmond," in addition to being "the primary recruiter of other participants within the conspiracy." *Id.*

---

[3] 1 ounce x 28 grams per ounce x 30 distribution days = 840 grams.

5

The attribution of 31.44 kilograms of heroin to the conspiracy resulted in a base offense level of 38 under the Sentencing Guidelines. J.A. 243. The PSR then applied enhancements for being a leader and organizer of the conspiracy, using a minor in support of the conspiracy, and possessing a firearm in furtherance of the conspiracy. This resulted in a total offense level of 46. J.A. 243–44. Under the then-applicable Guidelines, any offense level of 43 or higher resulted in a term of life imprisonment. J.A. 241.

Salas objected to the drug-weight calculation in the PSR, arguing that the Probation Office had impermissibly looked to the contents of government reports, including DEA summaries of witness interviews, to calculate the total amount of heroin involved in the conspiracy. J.A. 19–21. He asserted that, "at the very least," the district court ought to conclude that there were only 30 kilograms involved in the conspiracy, instead of 31.44 kilograms, which would result in a base offense level of 36 instead of 38. J.A. 21. Salas also challenged the factual basis for the three Guideline enhancements. J.A. 21–24. The district court overruled Salas's objections to the Guideline enhancements. J.A. 31. Salas never argued that the jury was required to determine the relevant drug weight. As to drug weight, the district court concluded that the conspiracy involved "at least ten kilograms but less than 30 kilograms" of heroin, thereby reducing Salas's base offense level from 38 to 36. J.A. 31–32. Salas's new total offense level of 44 still resulted in a Guideline sentence of life imprisonment, which the district court imposed. J.A. 32, 42–47.

Salas appealed his conviction and sentence, arguing that the evidence was insufficient to convict him and the district court erred by imposing the three challenged Guideline enhancements. On February 28, 2000—after Salas's opening brief was filed but

before the Court issued its opinion—Salas filed a motion in the district court seeking to compel his attorney to communicate with him about his appeal. J.A. 8 (ECF No. 96). The district court granted the motion and directed Salas's lawyer "to provide Defendant with a copy of the trial transcript, and communicate with Salas and tell him whether or not an appeal was filed," and, "[i]f an appeal was filed . . . to forward to the Defendant copies of all pleadings filed with the Fourth Circuit." J.A. 48. The district court entered its order on the same day that we affirmed Salas's conviction and sentence. *United States v. Salas*, No. 99-4488, 2000 WL 384040 (4th Cir. Apr. 17, 2000) (per curiam) ("*Salas I*").

Under Supreme Court rules, Salas had 90 days from April 17, 2000, to file a petition for certiorari, Sup. Ct. R. 13(1) (1999), making the deadline July 17, 2000.[4] Meanwhile, on June 26, 2000, the Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466 (2000), holding that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. The Supreme Court had granted certiorari in *Apprendi* on November 29, 1999, five days after Salas filed his opening brief on direct appeal in this Court. Even so, Salas never filed a reply brief on direct appeal, much less one referencing *Apprendi* as a pending case or one making an *Apprendi*-type argument. Nor, after *Apprendi* was issued, did Salas file a petition for certiorari in the 21 days remaining before his time to do so expired.

---

[4] 90 days from April 17, 2000, fell on July 16, 2000, a Sunday. This made the actual deadline Monday, July 17. *See* Sup. Ct. R. 30(1) (1999).

7

Instead, on July 13, 2000—four days before his certiorari deadline—Salas filed motions in the district court seeking to replace his attorney. J.A. 8 (ECF Nos. 109 & 110). The district court ruled on the motions on July 28, 2000, after the time to file a petition for certiorari had run. J.A. 49–50. The district court denied the motions as moot, reasoning that once we had affirmed Salas's conviction, his trial counsel no longer represented him. Even so, the district court directed Salas's counsel, Peter Eliades, to file "a letter detailing the manner in which he has complied with the Court's April 17, 2000 Order that directed [him] to both provide Defendant with a copy of the trial transcript and any pleadings filed with the Fourth Circuit, and to communicate with Salas regarding the status of the appeal." J.A. 49.[5] No responsive letter from counsel appears on the district court's docket.

Under our decision in *United States v. Torres*, 211 F.3d 836, 837 (4th Cir. 2000), in the absence of a petition for certiorari, Salas's conviction became final "on the date that this Court's mandate issue[d] in his direct appeal." The mandate issued on May 9, 2000, *see* No. 98-4488 (ECF No. 44), and Salas's conviction was therefore final as of that date.

Salas filed his first motion to vacate under 28 U.S.C. § 2255 in January 2001. J.A. 9 (ECF Nos. 118–19). The petition raised three claims, including a claim of *Apprendi* error, J.A. 58–59, and two claims of ineffective assistance of counsel. More specifically, Salas

---

[5] There is no "federal constitutional right to counsel on direct discretionary appeals." *United States v. Taylor*, 414 F.3d 528, 536 (4th Cir. 2005) (citing *Ross v. Moffitt*, 417 U.S. 600, 610 (1974)). Even so, an attorney appointed under the Criminal Justice Act has a duty to "inform [a defendant] of the result of his appeal to this court and of his right to petition the Supreme Court for certiorari." *Proffitt v. United States*, 549 F.2d 910, 912 (4th Cir. 1976); *accord United States v. King*, 11 F. App'x 219, 221 (4th Cir. 2001).

argued that Eliades, his counsel at trial and on appeal, performed deficiently by failing to request a poll of the jury and in advising him not to plead guilty. J.A. 59–61. Salas did not claim that Eliades was ineffective for failing to consult with him about filing a certiorari petition.

A few months after Salas's § 2255 motion was docketed, we held, in *United States v. Sanders*, 247 F.3d 139, 148 (4th Cir. 2001), that *Apprendi* does not apply retroactively on collateral review. Because, under *Torres*, Salas's conviction had become final before *Apprendi* was decided, the district court held that *Sanders* foreclosed Salas's *Apprendi* claim. J.A. 92–93. The district court also denied Salas's ineffective assistance of counsel claims. J.A. 93–96.

Salas appealed, filing an informal brief on June 4, 2002. J.A. 105–07. He continued to pursue his *Apprendi* claim, arguing that, under *Griffith v. Kentucky*, 479 U.S. 314 (1987), his conviction became final when his 90-day window to file a petition for certiorari closed.[6] Therefore, he claimed, "*Apprendi* applie[d] retroactively to [his] case." J.A. 105.

While the appeal of the denial of Salas's § 2255 motion was pending, the Supreme Court held in *Clay v. United States*, 537 U.S. 522 (2003), that, under § 2255, "[f]inality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Id.*

---

[6] *Griffith* held that the rule of *Batson v. Kentucky*, 476 U.S. 79 (1986), applied "to litigation pending on direct state or federal review or not yet final when *Batson* was decided." *Griffith*, 479 U.S. at 316. In a footnote, *Griffith* stated that "final" meant "a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." *Id.* at 321 n.6.

at 527 (citing *Griffith*, 479 U.S. at 321 n.6). *Clay* thus abrogated our decision in *Torres*, the precedent applied by the district court in ruling that Salas could not raise an *Apprendi* claim because his conviction was final before *Apprendi* was decided. On July 11, 2003, we nonetheless denied a certificate of appealability and dismissed the appeal, stating that Salas "ha[d] not made a substantial showing of the denial of a constitutional right." *United States v. Salas*, 68 F. App'x 484, 484 (4th Cir. 2003) (per curiam) ("*Salas II*"). Salas then sought panel rehearing or rehearing en banc, pointing out that the Supreme Court had decided *Clay* while his appeal was pending. J.A. 109–110. On September 2, 2003, we denied the request. J.A. 112–13. Salas then filed a petition for certiorari, which the Supreme Court denied. *See Salas v. United States*, 124 S. Ct. 1462 (2004).

Salas re-raised his *Apprendi* claim at least three times in the district court. First, in September 2003, Salas filed a motion under Rule 60(b) to alter or vacate the district court's denial of his first § 2255 petition. J.A. 114–121. Salas's motion raised the same argument appearing in his unsuccessful en banc petition—*i.e.*, that *Clay* abrogated *Torres* such that his conviction was not final when *Apprendi* was decided. J.A. 114. The district court construed the motion as an unauthorized successive petition and dismissed it for lack of jurisdiction. Salas did not appeal.

Then, in June 2005, Salas filed a second motion under Rule 60(b), this time arguing that his trial counsel had been ineffective in failing to communicate with him about his appeal and failing to file a petition for certiorari that would have preserved his *Apprendi* claim. J.A. 128–38. The district court also construed this motion as an unauthorized successive petition and dismissed it for lack of jurisdiction. J.A. 149–50.

10

Finally, in July 2005, Salas filed a motion under Rule 59(e) to alter or amend the district court's dismissal of his second Rule 60 motion. J.A. 151–56. The motion relied on *Gonzalez v. Crosby*, 545 U.S. 524 (2005), decided in June 2005. There, the Supreme Court held that a Rule 60(b) motion "is not to be treated as a successive habeas petition if it does not assert, or reassert, claims of error in the movant's . . . conviction." *Id.* at 538.[7] *Gonzalez* further explained that a Rule 60(b) motion challenging only a district court's application of a habeas statute of limitations is not a second or successive petition. *Id.* at 534. Salas relied on *Gonzalez* to argue that he could use Rule 60(b) to challenge the district court's prior determination about his conviction's finality. The district court denied this motion as improperly successive but then instructed Salas that he could "move the Fourth Circuit Court of Appeals for an order authorizing the district court to consider his successive application." J.A. 157–160.

Salas then appealed the denial of his second Rule 60(b) motion and his Rule 59 motion to this Court, where he filed an informal brief in August 2005. No. 05-7207 (ECF Nos. 1 & 11); S.A. 328–34. He argued that the district court had erred in construing his second Rule 60(b) motion as a second-or-successive petition, citing *Gonzalez*. S.A. 329. He also asserted that his trial counsel's purported failure to communicate with him about filing a petition for certiorari had unjustly foreclosed him from obtaining *Apprendi* relief.

---

[7] *Gonzalez* addressed Rule 60(b) as applied to state habeas petitions under 28 U.S.C. § 2254, but it applies equally to § 2255 motions to vacate. *See, e.g.*, *United States v. McRae*, 793 F.3d 392, 397 (4th Cir. 2015).

11

S.A. 331. We dismissed the appeal in November 2005. *United States v. Salas*, 155 F. App'x 691 (4th Cir. 2005) (per curiam) ("*Salas III*"). We simultaneously construed Salas's appeal as an application for a certificate of appealability and as an application to file a second-or-successive habeas petition, and we denied the application. Salas filed a petition for panel rehearing or rehearing en banc, which we denied. No. 05-7207 (ECF Nos. 22, 28). He then filed a petition for certiorari, which the Supreme Court denied. *See Salas v. United States*, 126 S. Ct. 2047 (2006).

In May 2010, Salas filed an application for a writ of mandamus in this Court, which we construed as a motion to recall the mandate and docketed as a motion in his direct appeal. *See* No. 99-4488 (ECF No 48); J.A. 166–74.[8] In substance, Salas sought to file an out-of-time petition for certiorari to the Supreme Court on the theory that, if such a petition were filed, it would have the effect of retroactively making *Apprendi* relief available to him. J.A. 166. Salas argued that such relief was appropriate because, he claimed, his counsel had never communicated with him after he was convicted, either about the substance of his direct appeal or about filing a petition for certiorari. J.A. 170, 183. In June

---

[8] Salas filed other motions not relevant to this opinion in the interim. In 2006, Salas filed a notice with the district court seeking to preserve a claim under *United States v. Booker*, 543 U.S. 220 (2005). The district construed the filing as a motion and denied it. From 2007 to 2009, Salas continued to pursue relief, filing one motion unrelated to his *Apprendi* claim and the denial of his first § 2255 petition. *See* J.A.11. Furthermore, from 2011 through 2016, Salas filed one motion unrelated to his *Apprendi* claim and the denial of his first § 2255 petition. He unsuccessfully pursued an appeal of this motion. *See* J.A.11–12.

12

2010, we issued a notice to Salas's prior attorney, Peter Eliades, requiring him to respond. No. 99-4488 (ECF No. 50).

Eliades filed a two-page response, asserting that his prior law firm could no longer retrieve Salas's file because it had been "shredded." J.A. 185. He also disclaimed having any "independent recollection of Salas requesting that this case be appealed to the U.S. Supreme Court," although he acknowledged that he "[d]id not recall advising Salas, in writing, of his right to file" a certiorari petition. J.A. 186. Eliades also stated that he could only "assume" that he was "totally compliant" with the district court's two orders to him— the first, from April 2000, requiring him to communicate with Salas about his appeal, J.A. 48, and the second, from July 2000, requiring him to file a letter with the district court detailing those communications. J.A. 49–50. We then denied the motion to recall the mandate. J.A. 187. Salas sought panel rehearing or rehearing en banc, and the Clerk of the Court informed him that his request was impermissible given the procedural posture of the case. No. 99-4488 (ECF Nos. 54 & 55).

In December 2016, Salas moved for a sentence reduction under 18 U.S.C. § 3582(c) and amendment 782 to the Guidelines, which lowered the offense levels applicable to various drug offenses. J.A. 12 (ECF No. 174). The district court granted the motion, reducing Salas's sentence to thirty years. J.A. 12 (ECF No. 178).

13

In March 2018, Salas filed his third motion under Rule 60(b)(4). J.A. 188–97.[9] He again sought to re-raise his *Apprendi* claim, this time by arguing that his judgment of conviction was void for lack of jurisdiction. *See* Fed. R. Civ. P. 60(b)(4). Salas advanced two arguments. First, he again asserted that, under the Supreme Court's decision in *Clay*, his conviction was not final when *Apprendi* was decided and the district court had erred in concluding otherwise. J.A. 189–91. Second, he argued that under the Supreme Court's decision in *Gonzalez*, his Rule 60(b) motion properly attacked a defect in the habeas proceeding and did not raise an impermissible second-or-successive claim. J.A. 191–95. Salas did not renew his attack on his trial counsel's performance.

The district court denied the motion in May 2018 as untimely and for failure to establish extraordinary circumstances. J.A. 210–14. Although Salas had styled his motion as one brought under only Rule 60(b)(4), the district court also considered whether Salas might be entitled to relief under Rule 60(b)(6). The district court reasoned that a Rule 60(b) motion "must be made within a reasonable time" of the proceeding it challenges, Fed. R. Civ. P. 60(c)(1). The court stated that since Salas's motion sought relief from the district court's denial of his first habeas petition, Salas was obliged to file it shortly after the district court entered its order denying that petition in January 2002. Accordingly, Salas's motion, "filed over sixteen years after the entry of the challenged judgment, was not filed in a

---

[9] The motion was erroneously docketed in the Alexandria Division as a petition under 28 U.S.C. § 2241. The request was subsequently transferred to the Richmond Division and properly docketed as a Rule 60(b) motion. J.A. 206–08.

14

reasonable time." J.A. 211. Second, the district court noted that the Supreme Court has explained that "a movant seeking relief under Rule 60(b)(6) [needs] to show 'extraordinary circumstances' justifying the reopening of a final judgment." *Gonzalez*, 545 U.S. at 535 (quoting *Ackermann v. United States*, 340 U.S. 193, 199 (1950)). Applying Supreme Court and Circuit precedent, the district court concluded that the change in law regarding when a conviction becomes "final" under § 2255 (i.e., the shift from *Torres* to *Clay* in 2003) did not satisfy this requirement.

This appeal followed.

## II.

## A.

Salas conceded at oral argument that, although styled as a Rule 60(b)(4) motion, the district court properly construed it as one also brought under Rule 60(b)(6). Salas also conceded that the 60(b)(4) motion was properly denied and that the focus of the appeal is the Rule 60(b)(6) motion.

To obtain relief from a judgment under Rule 60(b), "a moving party must first show (1) that the motion is timely, (2) that he has a meritorious claim or defense, and (3) that the opposing party will not suffer unfair prejudice if the judgment is set aside." *United States v. Welsh*, 879 F.3d 530, 533 (4th Cir. 2018). Under Rule 60(b)(6), the party must also show extraordinary circumstances. *Gonzalez*, 545 U.S. at 535. Denial of a Rule 60(b)(6) motion is reviewed for abuse of discretion. *Welsh*, 879 F.3d at 533 (4th Cir. 2018). Salas contends that the district court abused its discretion in denying the Rule 60(b)(6) motion because of the "extraordinary circumstances" in this case—namely, that over a span of almost twenty

15

years, Salas was incorrectly and repeatedly deprived of his right to pursue an *Apprendi* claim, which he maintains would have resulted in a reduction in his sentence. Salas argues that, had he been able to pursue his *Apprendi* claim, he likely would have been sentenced to twenty years of imprisonment, rather than to life, and that he would have been released from prison by now.[10] Salas asserts that we first erred in 2003 when we declined to rehear Salas's appeal from the denial of his § 2255 petition after the Supreme Court decided *Clay*. Salas maintains that our alleged error in 2003 was the beginning of the "extraordinary circumstances" that have allegedly resulted in an injustice to Salas. For the following reasons, we cannot agree.

As Salas notes, in declining to hear his appeal from the denial of his first § 2255 petition, we held:

> Mario Salas seeks to appeal the district court's order denying his motion filed under 28 U.S.C. § 2255 (2000). We have reviewed the record and the district court's opinion and conclude that Salas has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2) (2000). Accordingly, we deny a certificate of appealability and dismiss the appeal.

*Salas II*, 68 F. App'x at 484. Critically, we did not hold that Salas's conviction was final when *Apprendi* was decided. Rather, we held that Salas had failed to make "a substantial showing of the denial of a constitutional right." *Id.* That holding was correct for several reasons.

---

[10] As noted, Salas's sentence has been reduced to a 30-year term of incarceration. The Bureau of Prisons website indicates that his release date is July 29, 2024.

16

First, because Salas did not raise an argument at trial or on direct appeal that the jury was required to determine the relevant drug weight, he procedurally defaulted this claim.[11] *See Bousley v. United States*, 523 U.S. 614, 622 (1998). A defendant can overcome his default if he can show either (1) cause for the default and prejudice resulting therefrom, or (2) actual innocence. *Id.* Salas has never argued that he is actually innocent of conspiring to distribute one kilogram or more of heroin. Accordingly, his *Apprendi* claim is viable only if he can satisfy the cause-and-prejudice exception to procedural default.

Salas cannot show cause for his default. He has not attempted to argue that *Apprendi* was so novel that he should be excused from his failure to raise such a claim before *Apprendi* was decided. Even if he had raised this argument, our decision in *Sanders* would foreclose this assertion. *See Sanders*, 247 F.3d at 144–46. *Sanders* rejected two arguments—first, that the basis for an *Apprendi* claim was not reasonably available before *Apprendi* was decided, and second, that it would have been futile to raise such a claim. *Sanders* noted that, in *Bousley* itself, the Supreme Court explained that "futility cannot

---

[11] At argument, the government denied that it has waived the right to raise this procedural default argument, and the government alternatively invoked the exceptions to the "waiver of the waiver" rule as set forth in *United States v. Metzger*, 3 F.3d 756 (4th Cir. 1993). We agree that the *Metzger* exceptions—the interests in "judicial efficiency, conservation of scarce judicial resources, and orderly and prompt administration of justice"—are particularly applicable here. In any event, we find that, even if the government's procedural default argument was not preserved, we could reach the same conclusion. This is because, as we discuss, *infra*, even if the government waived the right to raise procedural default, Salas must still show prejudice, and he has failed to do so.

17

constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time."[12] *Id.* at 145 (quoting *Bousley*, 523 U.S. at 623).

A defendant may also establish cause for a procedural default by showing that defense counsel performed deficiently by failing to raise a particular claim. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986) (holding that constitutionally ineffective assistance of counsel may provide cause for a procedural default). In *United States v. Dyess*, 730 F.3d 354 (4th Cir. 2013), however, we held that a defense attorney's failure to anticipate *Apprendi* does not constitute deficient performance. *See id.* at 363. Thus, under *Sanders* and *Dyess*, Salas cannot show cause for failing to raise an *Apprendi*-type claim on direct appeal.

Moreover, Salas's counsel's performance in this case did not result in an injustice to Salas. Salas argues that counsel's failure to file a petition for certiorari raising an *Apprendi* claim somehow forfeited his ability to seek *Apprendi* relief. But a defendant who raises a claim for the first time in a certiorari petition has still procedurally defaulted that claim. *See Bousley*, 523 U.S. at 622 (stating that a petitioner procedurally defaults a claim "by failing to raise it on direct review"); *Peveler v. United States*, 269 F.3d 693, 698–99 (6th Cir. 2001) (holding that a defendant "cannot avoid procedural default by asserting [a] claim" for the first time in a certiorari petition). Thus, even if counsel had raised an

---

[12] *Sanders* also favorably quoted a case, *United States v. Nance*, 236 F.3d 820 (7th Cir. 2000), where the Seventh Circuit noted that "as far back as 1997 defendants were arguing . . . that the type of drug that they were charged with distributing in violation of 21 U.S.C. § 841 was an element of the offense that had to be proven to the jury beyond a reasonable doubt." *Sanders*, 247 F.3d at 145 (quoting *Nance*, 236 F.3d at 823).

18

*Apprendi* argument in a petition for certiorari, Salas would nonetheless need to show cause and prejudice to obtain relief on his procedurally defaulted claim. Because *Sanders* and *Dyess* foreclose him from showing cause, his claim necessarily fails.[13]

Even if Salas could show cause for failing to raise an *Apprendi*-type argument at trial or on direct appeal, he still could not establish prejudice. To establish prejudice, a "habeas petitioner must show 'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Carrier*, 477 U.S. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (ellipsis in original). "The burden rests with the petitioner to show that there is a reasonable probability that the jury would have reached a different, more favorable conclusion." *Derman v. United States*, 298 F.3d 34, 46 (1st Cir. 2002) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)); *accord Pettigrew*, 346 F.3d at 1144–45. "[T]he 'showing of prejudice' required to overcome procedural default on collateral review 'is significantly greater than that necessary' to establish plain error on direct review." *Pettigrew*, 346 F.3d at 1144 (quoting *Carrier*, 477 U.S. at 493–94). For purposes of assessing an *Apprendi* error, the "inquiry focuses on the likelihood that the jury, had it been asked the question, would have found that the underlying

---

[13] The government also argues that, even if Salas's claim is not procedurally defaulted and time-barred, Salas's claim would still fail under a plain error standard of review. The plain error standard of review does not apply. The government is correct, however, that Salas's claim would fail under this standard of review if it did apply. *See United States v. Cotton*, 535 U.S. 625 (2002); *United States v. Brown*, 757 F.3d 183, 194 (4th Cir. 2014); *Dyess*, 730 F.3d at 361; *United States v. Hadden*, 475 F.3d 652, 671–72 (4th Cir. 2007); *United States v. Smith*, 441 F.3d 254, 272 (4th Cir. 2006); *United States v. Mackins*, 315 F.3d 399, 408 (4th Cir. 2003).

conspiracy involved the manufacture and distribution of at least" the required quantity of drugs. *Derman*, 298 F.3d at 46.

The jury in this case would easily have concluded that the conspiracy involved one kilogram or more of heroin. Two witnesses, Patricio Mateo and Marcellus Brandon, testified that they transported or distributed multiple kilograms of heroin in furtherance of the conspiracy. S.A. 29–30, 150. Another witness, Dwayne Jefferson, testified that he (or others acting on his behalf) purchased between one and two ounces of heroin every three or four days for four months from persons associated with the conspiracy, sometimes with Salas present. S.A. 177–180, 183–84. Salas did not contest these amounts during trial, instead focusing on the witnesses' credibility. Then, at sentencing, Salas's chief argument as to drug weight was that the district court should find that the conspiracy involved 30 kilograms of heroin rather than 31.44 kilograms. J.A. 21. To receive a life sentence, Salas only had to be found responsible for at least one kilogram. Salas's argument that the jury would not have found him to be responsible for at least this amount strains credulity. Thus, Salas cannot establish prejudice arising from his procedural default.[14] *Accord Derman*, 298 F.3d at 46 (where the defendant did not raise an *Apprendi*-type claim on direct appeal, *Apprendi* was decided between the appellate court's affirmance of the defendant's conviction and the date the defendant's conviction became final, and the defendant raised

---

[14] As we explained in *Dyess*, prejudice is particularly difficult to show in this context. That is, if, before trial, Salas had made a pre-*Apprendi* argument that the jury was required to find the requisite drug weight, "the Government could have simply issued a superseding indictment with drug weights" expressly charged. 730 F.3d at 363–64. Had the government done so here, the jury easily would have convicted Salas of conspiring to distribute one kilogram or more of heroin.

an *Apprendi* claim for the first time in a timely § 2255 petition, finding no prejudice where the evidence of sufficient drug weight was "commanding"); *see also United States v. Pettigrew*, 346 F.3d 1139, 1144–48 (D.C. Cir. 2003) (holding that the defendant could not show prejudice sufficient to overcome his procedural default, noting that when "quantity [is] uncontested at trial, there is no reason to expect that the trial's outcome would have been different had the issue been specifically put to the jury").

In sum, when, in 2003, we declined to issue a certificate of appealability on Salas's § 2255 petition because he "ha[d] not made a substantial showing of the denial of a constitutional right," *Salas II*, 68 F. App'x at 484, we were correct in so finding. The finality issue was not, and never has been, dispositive.[15] If we had vacated the district court's finality ruling in 2003 and remanded the case for further consideration in light of *Clay*, the district court simply would have concluded that Salas had procedurally defaulted his claim and could not overcome that default through a showing of cause or prejudice. For the same reason, any *Apprendi* error in this case had no "substantial and injurious effect" and was therefore harmless. *United States v. Smith*, 723 F.3d 510, 517 (4th Cir. 2013) (explaining how harmlessness standards apply on collateral review); *accord Sustache-*

---

[15] As the government notes, we remanded several cases that were on appeal from the denial of habeas relief when *Clay* was decided. *See, e.g.*, *United States v. McDonald*, 64 F. App'x 359, 361 (4th Cir. 2003). The fact that we chose not to do so here supports the conclusion that we did not view the finality issue as critical. That is, whereas we decided in some cases that *Clay* might affect the resolution of some *Apprendi* claims, our rejection of Salas' *Apprendi* claim reflects a determination in this case that *Clay* would not affect the resolution of Salas's *Apprendi* claim, given the overwhelming evidence of drug quantity against Salas at trial.

*Rivera v. United States*, 221 F.3d 8, 18 (1st Cir. 2000) (rejecting an *Apprendi* claim raised on collateral review on harmlessness grounds).

B.

We also affirm for another reason: the district court's two reasons for denying Salas's motion—untimeliness and failure to show "extraordinary circumstances"—were correct. First, Salas's motion was untimely. Under Rule 60(c)(1), "[a] motion under Rule 60(b) must be made within a reasonable time," and "the movant bears the burden of showing timeliness." *Moses v. Joyner*, 815 F.3d 163, 166 (4th Cir. 2016). Salas's "extraordinary circumstances" claim derives from his argument that the district court wrongly concluded in January 2002 that Salas's conviction was final before *Apprendi* was decided. That error was apparent, however, by the latest, when *Clay* was decided in March 2003, which is why Salas relied on *Clay* in his first Rule 60(b) motion filed in September 2003, in which he raised the same *Apprendi* claim he raises here, and where he first raised the *Clay* issue before the district court. J.A. 114–21. The claim may have been timely at that point. Salas did not, however, appeal the denial of this first Rule 60(b) motion, and his claim is certainly not timely now, well over a decade after the purported error became clear. *See Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC*, 859 F.3d 295, 300 (4th Cir. 2017) (delay of two years was "not reasonably timely"); *Moses*, 815 F.3d at 166 (delay of fifteen months was "inordinate"); *McLawhorn v. John W. Daniel & Co.*, 924 F.2d 535, 538 (4th Cir. 1991) (per curiam) (finding no abuse of discretion where district court denied as untimely a Rule 60(b) motion filed four months after entry of summary judgment).

22

We have consistently barred litigants from using Rule 60 to bring what are essentially untimely appeals. *See Aikens v. Ingram*, 652 F.3d 496, 501 (4th Cir. 2011) (en banc) ("[I]f the reason asserted for the Rule 60(b)(6) motion could have been addressed on appeal from the judgment, we have denied the motion as merely an inappropriate substitute for an appeal."); *In re Burnley*, 988 F.2d 1, 3 (4th Cir. 1992) (per curiam) ("A Rule 60(b) motion may not substitute for a timely appeal."). To the extent that Salas believes his claim of *Clay* error should have justified relief under Rule 60, he could have sought appellate review after the district court dismissed his first Rule 60 motion in 2004. The district court did not abuse its discretion in dismissing the same claim when it was re-raised over a decade later.

## C.

In addition to finding that the district court properly found that the Rule 60(b) motion was untimely, we also find that the district court did not abuse its discretion to the extent that it denied the Rule 60(b) motion on its merits. Rule 60(b)(6) empowers a district court to "relieve a party …from a final judgment, order, or proceeding for … any other reason that justifies relief." To obtain such relief, a defendant must make a showing of "'extraordinary circumstances' justifying the reopening of a final judgment." *Gonzalez*, 545 U.S. at 535 (quoting *Ackermann*, 340 U.S. at 199). The gravamen of Salas's claim is that, because his conviction was not final under *Clay* when *Apprendi* was decided, he should be able to raise a forfeited claim of *Apprendi* error on collateral review. However, as set forth by the Supreme Court in *Gonzalez*, a change in the law governing finality simply does not constitute an extraordinary circumstance justifying relief under Rule 60(b).

23

In *Gonzalez*, the defendant unsuccessfully sought post-conviction relief in state court and then filed a federal habeas petition. *Gonzalez*, 545 U.S. 524. The district court held that the habeas petition was untimely. The Supreme Court then changed the law, holding in *Artuz v. Bennett*, 531 U.S. 4, 8–9 (2000), that the applicable statute of limitations was subject to tolling in circumstances mirroring those in Gonzalez's case. After *Artuz* was decided, the petitioner in *Gonzalez* filed a Rule 60(b)(6) motion, seeking relief from the order dismissing his federal habeas petition. *Gonzalez* held that "[b]ecause petitioner's Rule 60(b) motion challenge[d] only the District Court's previous ruling on the [applicable] statute of limitations, it [was] not the equivalent of a successive habeas petition." 545 U.S. at 535–36. The Supreme Court nonetheless affirmed the denial of habeas relief on alternative grounds. The Court assumed that the district court's statute-of-limitations ruling was incorrect under *Artuz*, but the Court nevertheless rejected the argument that an *Artuz* error constituted the kind of "extraordinary circumstance" justifying relief under Rule 60(b):

> The District Court's interpretation was by all appearances correct under the Eleventh Circuit's then-prevailing interpretation of 28 U.S.C. § 2244(d)(2). It is hardly extraordinary that subsequently, after petitioner's case was no longer pending, this Court arrived at a different interpretation. Although our constructions of federal statutes customarily apply to all cases then pending on direct review, not every interpretation of the federal statutes setting forth the requirements for habeas provides cause for reopening cases long since final.

*Id.* at 536 (internal citation omitted). *Gonzalez* explained that "[t]he change in the law worked by *Artuz* is all the less extraordinary in petitioner's case, because of his lack of diligence in pursuing review of the statute-of-limitations issue." *Id.* at 537.

24

Here, as in *Gonzalez*, the district court's dismissal of Salas's *Apprendi* claim "was by all appearances correct" under *Torres* and *Sanders*. Here, too, the Supreme Court changed the law in *Clay*, just as *Gonzalez* arose from the change in the law following *Artuz*. Yet, as *Gonzalez* held, a change in the law is "hardly extraordinary" and does not "provide[] cause for reopening cases long since final."[16] 545 U.S. at 536; *see also Agostini v. Felton*, 521 U.S. 203, 239 (1997) (stating that "[i]ntervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)").

Relying on two arguments, Salas asserts that the test for whether "extraordinary circumstances" exist is fact-specific and that the facts here differ from those in *Gonzalez*. Salas first asserts that neither *Gonzalez* nor *Moses* forecloses relief because those cases dealt with changes in decisional law *after* final judgment, whereas Salas relies on a change in decisional law that occurred while his first post-conviction appeal was still pending. But that argument is not persuasive. As discussed above, even if the Court applied *Clay* and remanded Salas's habeas case for further consideration, Salas still would not have been able to overcome his procedural default.

---

[16] Even before *Gonzalez* was decided, we had already "held that 'a change in decisional law subsequent to a final judgment provides no basis for relief under Rule 60(b)(6).'" *Moses*, 815 F.3d at 168–69 (quoting *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993)); *see also Hall v. Warden, Md. Penitentiary*, 364 F.2d 495, 496 (4th Cir. 1966) (en banc) (stating that "judgments which had become final long before [an intervening Supreme Court case] was decided should not be reopened merely upon a showing of inconsistency with that decision").

Salas also argues that his attorney's purported abandonment in failing to advise him about filing a petition for certiorari constitutes an extraordinary circumstance.[17] We cannot agree with Salas's characterization of counsel's performance. First, there has never been any factual showing that Salas's trial lawyer rendered deficient performance. Salas did not raise a claim of ineffective appeal advice in his first § 2255 petition, and the district court never held an evidentiary hearing on that issue. As the government notes, it would be odd indeed for us to treat counsel's purported neglect as a basis for Rule 60(b)(6) relief when there has never been a factual finding that defendant's trial counsel acted deficiently.

Next, even assuming that counsel was ineffective in failing to advise Salas of his right to file a certiorari petition, this claim is time-barred. Any ineffectiveness claim here must relate to the failure to advise Salas about his ability to file a petition for certiorari, rather than a failure to anticipate *Apprendi*, because the Court has previously held that failure to anticipate the result in *Apprendi* is not a basis for a claim of ineffective assistance of counsel. *Dyess*, 730 F.3d at 363. Insofar as Salas argues that his failure to file a petition for certiorari is the result of attorney negligence, he is really making a claim of "excusable neglect" under Rule 60(b)(1), rather than a claim for relief under Rule 60(b)(6). *See Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 811 (4th Cir. 1988) ("[W]hen the party is blameless, his attorney's negligence qualifies as a 'mistake' or

---

[17] This claim of attorney neglect, while previously raised by Salas in the district court (in his second Rule 60(b) motion and his Rule 59 motion), and before this Court (in Salas's second post-conviction appeal and in his motion to recall the mandate), appears nowhere in the motion that forms the basis for this appeal. *See* J.A. 188–97.

26

as 'excusable neglect' under Rule 60(b)(1)."). Any claims under Rule 60(b)(1) are, however, subject to a one-year limitations period. And collateral consequences of any ineffectiveness on the part of Salas's trial attorney would have been apparent once the Supreme Court decided *Clay* in March 2003. And indeed, after *Clay*, Salas filed his second motion under Rule 60(b)(6), where he, for the first time, tied his *Apprendi* claim to his counsel's allegedly deficient performance. The district court then dismissed the motion, and we affirmed on appeal. Even assuming that Salas's second Rule 60(b) motion was timely, Salas's third such motion—filed over a decade later—is not.[18]

\* \* \*

In sum, the district court did not abuse its discretion in concluding that Salas has failed to show extraordinary circumstances justifying relief under Rule 60(b)(6).

III

For the foregoing reasons, the judgment of the district court is:

*AFFIRMED.*

---

[18] As the government also notes, an ineffectiveness claim related to counsel's failure to advise Salas about his ability to file a petition for certiorari would also constitute an impermissible successive petition under § 2255. *See United States v. Dias*, 694 F. App'x 175 (2017) (per curiam). Additionally, we note that, although the government raised the law of the case doctrine as another reason to affirm, Salas argues, and we agree, that the law of the case doctrine is not appropriate to the facts in this case. Indeed, at oral argument, the government did not pursue its law of the case doctrine argument.